GRIFFIN & THOMAS *vs.* MORTIMER.

A bond given by a plaintiff in a judgment in the justices court of the city of New-York, after the suing out of a *certiorari* to *restore* the damages for which the judgment was obtained, with the interests and *costs*, does not render the *obligor* liable on his *bond* to the payment of the *costs of reversal*, in case the judgment be reversed.

The *form* of a bond in such case approved.

ERROR from the superior court of the city of New-York. Griffin recovered a judgment in a justice's court in the city of New-York, against Mortimer, for $30 damages, and $8$\frac{22}{100}$ costs. Mortimer having sued out a *certiorari*, Griffin, with Thomas as his surety, entered into a bond in the penal sum of $250, which, after reciting the judgment, was conditioned that if the judgment before the justice should be reversed or annulled, that they would *restore the damages for which the judgment was obtained, with the interest and costs;* whereupon Mortimer paid the amount of the judgment to Griffin. The judgment was subsequently *reversed* in the superior court, restitution awarded, and judgment for *costs of reversal* adjudged to Mortimer, who then brought his action of debt on the bond, setting forth in his declaration the above facts, and assigning for breach that Griffin had not *restored* to him the sum of $38,22, the amount of the judgment before the justice, with the interest thereof; *nor* had he paid to him the sum of $48,33, *the costs of the prosecution of the writ of certiorari.* The defendants pleaded a *tender* as to the first sum, and *demurred* as to that part of the breach which related to the *costs of reversal.* The plaintiff demurred to the plea of tender, and issues were joined upon both demurrers. The superior court adjudged the plea of tender to be *bad,* and the breach as to the costs of reversal to be *good,* and gave judgment for the plaintiff. The defendants sued out their writ of error to this court.

*R. Manning,* for plaintiff in error.

*D. Graham, Jun.* for defendant in error.

*By the Court*, NELSON, J. The main question presented in the case is, whether the security required by the act, 2 R. L. 396, § 143, before execution can issue, after service of the certiorari, *includes the costs of reversal* of the judgment. The language of the act is as follows: " That no execution upon any judgment to be given by virtue of this act, shall be prevented or stayed by any *certiorari* or other writ, in case the party, in whose favor such judgment shall be given, shall give such security as may be satisfactory to the court, to *restore* the debt or damages for which such judgment shall be obtained, with interest and costs, in case such judgment shall be reversed." The section then gives to the party prevailing upon the certiorari, execution for his costs in the court above.

The object of this provision is to permit the party who has succeeded before the justice, to collect his judgment notwithstanding the certiorari, provided he will give security to refund the same with interest in case of reversal, or in the language of the act, "*restore* the debt or damages for which such judgment shall be obtained, with the interest and costs, in case such judgment shall be reversed." The statute proceeds upon the presumption that the recovery before the justice is correct, and the debt due, and the delay unreasonable, and therefore, it gives to the party his election either to leave the judgment to abide the result of the decision upon the certiorari, or collect the money upon execution, provided he gives security to restore it. The security to the amount of the judgment before the justice, is an ample indemnity to the plaintiff in the certiorari against any hazzard of his rights by forcing the money out of his hands, and places him in as good a condition as he would have been if the execution had not been taken out ; although he is obliged to pay the judgment, he has security that it will be restored to him if the judgment be reversed, with interest. This is all the statute intended; in my opinion, or that its terms will fairly justify.

I cannot believe that the legislature, obviously acting upon the assumption that the party recovering before the justice ought not to be deprived of the fruits of his judgment while the same was undergoing an examination in the court above, and therefore provided for his immediate enjoyment of them

ALBANY,
Jan. 1832.

Griffin
v.
Mortimer.

intended, at the same time, to subject him to the penalty of giving security for the costs of reversal, in addition to securing restitution of the amount of the judgment below. This would not be merely indemnifying the plaintiff in the certiorari, it would be preferring his interest to that of the defendant. The legislature have always acted upon a different policy; instead of requiring security for costs to be given by the defendant in error, they have required it from the plaintiff in error. 1 R. S. 143, § 2, 3. Neither a writ of certiorari, or an appeal, can now be brought without first giving security in the one case to pay the judgment before the justice, and all such costs as shall be awarded on affirmance, and in the other, the judgment rendered on appeal and costs of the appeal and interest. 2 R. S. 256, § 173. id. 259, § 189.

The argument in favor of the construction given to this section in the court below is, that the word *damages* includes the *costs* before the justice, and therefore, as the word costs is afterwards used, it must mean those in the certiorari. This may be so, as it regards the use of the term in some instances in the act, but the reverse I think true as a general proposition. *Damages* and *costs* are distinct and separate parts of a judgment, and are so entered upon the record, and the judgment may be reversed as to the latter and affirmed as to the former. A brief reference to the act will shew the legislature thus understood the term; thus, in § 98, the defendant must give security to pay the debt or damages and *costs*, or surrender himself in execution, &c.; § 90, a non-resident must give security to pay debt, damages and *costs of suit*, &c.; § 91, defendant, to entitle himself to an adjournment in certain cases, must give security to pay debt and *costs;* § 124, he must give security to pay the debt, damages and *costs;* § 137, on oath of danger, the defendant may give security to pay the debt, damages and *costs* to stay execution. Without pursuing the examination further, it must be obvious the legislature in the several instances above noted, considered the *damages* and *costs* as distinct parts of a judgment, and that the former did not necessarily include the latter; and by giving the same construction to the provision under consideration, the conclusion is clear the bond was not intended, and does not in-

clude the *costs of the reversal* of the judgment. The terms of the 143d section fully sustain the construction thus given to them; they are "to *restore* the debt or damages for which such judgment shall be obtained, with interest and costs, in case such judgment shall be reversed." *Debt* or *damages* are intended to embrace the recovery before the justice, in the different forms of action, which is the reason both terms are used, and without regard to the costs in either; and it is the *debt* or *damages*, as the case may be, thus recovered, which are to be *restored* or given back, with *interest* and *costs*.

It is also said that restricting the statute security to the judgment before the justice, *interest* could not be allowed upon the costs in the judgment, without doing violence to the terms of the act, and that to effect this, costs must be considered a part of the damages. This section is not very happily worded to convey what I think is the the meaning of the legislature; but I prefer the construction which would allow interest upon the costs, to that which would extend the term *costs*, used in immediate connection with the judgment before the justice, to the costs of reversal, to enable the plaintiff to collect them in the suit upon the bond, especially when the residue of the same section provides another mode of collecting them without any qualification.

The provision of the *twenty-five dollars act*, 1 R. L. 396, § 17, corresponds in terms with the one under consideration, and the uniform construction given to it is, that the security covers only the amount of the judgment before the justice, and interest.

The conclusion to which I have come on the first and principal question in the case, renders it unimportant to examine the second. I will only add, that I fully concur with the court below on that point.*

Judgment reversed, with single costs.

*The part of the opinion above alluded to, as delivered in the superior court by Ch. J. Jones of that court, is as follows: "It is said that the condition of the bond is curtailed by its recital, and that the word *costs* must be limited to the $8,22, given in the justice's court, and mentioned in the recital. The answer is that the bond is a statutory security, and the construction given

to the statute must govern that of the bond. The recital simply states the
judgment of the justice for $30 damages, and $8,22 costs, and the condition
provides that the obligors, in case of the reversal of the judgment shall restore
the damages recovered, together with interest and costs. I am unable to
discover any ground for the opinion that this recital in any way restrains or
qualifies the operation of the condition; the terms of the condition are in
exact conformity with the provisions of the statute, and the recital does noth-
ing more than describe the judgment upon which the execution was issued·
It does not purport or intend to prescribe or define the terms or nature of the
obligation to be expressed in the condition. The bond has reference to the
statute, and the obvious intention of it is to conform to the directions of the act,
and to embody in its condition the obligation which the statute created in the
case. It is not denied that the obligation of a bond may be, and often is con-
strued in reference to the recitals that precede it, and which, being the admis-
sions of the parties of the facts or agreements upon which the contract is
founded, give a meaning to the condition which *may* be narrower than the
terms would in the natural sense of them import. In these cases the recital
expresses the arrangement or agreement of the contracting parties, and derives
its controlling influence upon the condition from their assent. But in the case
before us, the recital relied on is simply a recital of a judgment in a court of
justice; it neither states, nor has reference to any agreement, act or intention
of the parties to the obligation. Indeed, the bond was not founded on any
agreement or act of the obligee; he had no agency in taking it or settling its
form; it was a statutory provision, and the terms of it are prescribed by the
act. It was taken, and the form of it settled by the court; and the recitals
introduced into it not being the act or language of the obligee, cannot vary or
prejudice his rights as secured to him by the statute. The bond was taken by
the justice under and pursuant to an act of the legislature, and must be in ac-
cordance with the provisions of the statute; and we must give it the best
construction which it is capable of receiving, to conform it to the terms of
the act and establish its validity. In our opinion, the condition of this
bond and its recital do conform to the provisions of the statute."